UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| v. | ) | |
| | ) | Case No.      1:11-CR-302 (RLW) |
| JOHN R. BROCK, | ) | |
| | ) | Violation:     18 U.S.C. § 287 |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

MEMORANDUM OF THE UNITED STATES IN AID OF SENTENCING

The United States respectfully submits this Sentencing Memorandum regarding the defendant John R. Brock ("defendant"), who is scheduled to be sentenced on January 3, 2012.  The United States recommends that this Court impose a sentence determined by the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), including a period of incarceration of at least 30 months, a period of supervised release not to exceed three years, restitution in the amount of $485,535 and a $100 special assessment.  Finally, as set forth in the plea agreement between the parties, the United States respectfully requests that the Court enter a judgement of forfeiture against the defendant.

In the following Memorandum, the United States addresses the relevant Guidelines issues examining first the offense conduct in Chapter 2, then adjustments in Chapter 3.  In the Plea Agreement governing this matter, the parties have agreed on all of the specific offense characteristics.  After application of the appropriate enhancements in Section 2, and the Guidelines' adjustments in Section 3, defendant's properly calculated Adjusted Offense Level is

17 (24-30 months incarceration), resulting in a recommended period of incarceration of 30 months.

## I    FACTUAL BACKGROUND OF THE OFFENSE OF CONVICTION

At all relevant times, defendant was an employee of the Armed Forces Institute of Pathology ("AFIP"), a component of the Department of Defense ("DOD"), which is part of the executive branch of the United States government.

In 2007, defendant was hired as a Budget Analyst within the Resources Management Department at AFIP.  In this position, defendant was responsible for maintaining AFIP's travel management and administration using the Defense Travel System ("DTS"), which is the online travel reservation system used by DOD.

On or about September 23, 2008, defendant created a local travel voucher on the DTS using the profile of a former AFIP employee.  The travel voucher listed the former AFIP employee's social security number, but the name listed on the travel voucher was that of defendant's sister.  The expense claimed on the voucher was $5,525 for "invitational" expenses. On September 23, 2008, the voucher was approved, and on September 25, 2008, the Defense Finance and Accounting Service ("DFAS") issued a payment voucher showing payment of $5,525 to a bank account owned by defendant's sister.

On or about September 25, 2008, defendant's sister received an incoming wire transfer into her checking account totaling $5,525.  Defendant then instructed his sister, who was unaware of the scheme, to forward the funds to defendant's checking account.  Accordingly, on or about September 26, 2008, defendant's USAA checking account received an incoming wire from his sister's bank totaling $5,525.

Between September 30, 2008 and July 17, 2009, defendant created fifteen (15) additional travel vouchers using the same former employee's DTS profile.  Each of the travel vouchers listed the former employee's social security number, but the name of defendant's sister.  The expenses claimed on the vouchers ranged from $2,340 to $7,622.26 and totaled $73,692.15.  For each DTS travel voucher DFAS issued a corresponding payment voucher showing payment to the account of defendant's sister.  Between September 30, 2008 and July 17, 2009, defendant's sister's bank records show incoming wires labeled as "FED PAYMENT" totaling $73,692.15.

Between October 3, 2008 and July 27, 2009, bank records show a total of $63,676 in wire transfers originating from defendant's sister's account to defendant's USAA account.  Additionally, bank records show a $9,600 withdrawal from her account on February 6, 2009, and a corresponding mail deposit into defendant's USAA account in the amount of $9,600.

Beginning on or about August 26, 2009, and continuing through April 26, 2011, defendant created eighty-three (83) additional local travel vouchers under the same former AFIP employee's DTS profile using his social security number but the name of either defendant's sister or others as the payees.  The total value of the eighty-three (83) travel vouchers was $406,317.66.  Beginning on or about September 3, 2009, and continuing through March 8, 2011, bank records show eighty-three (83) corresponding incoming wire transfers from DFAS into defendant's USAA checking account labeled as "FED PAYMENT" totaling $406,317.66.

In submitting the above described travel vouchers to AFIP via the DTS, defendant knowingly and willfully made materially false, fictitious, and fraudulent claims against the United States given the fact that, at no time did defendant ever incur any of the expenses enumerated in the travel vouchers.  Moreover, defendant prepared the fraudulent travel vouchers

using the DTS profile of a former AFIP employee and the names of other individuals, including his sister.

As described above, during the period of time between September 2008 and April 2011, defendant submitted a total of ninety-nine (99) false travel vouchers through the DTS and received a total of $485,535 in cash as a result of the false claims he submitted to AFIP.  The parties stipulated and agreed in their plea agreement that, pursuant to U.S.S.G. § 2B1.1, the total amount received by defendant from the false, fictitious and fraudulent claims described herein was $485,535.

**II      SENTENCING CONSIDERATIONS**

**A.      Sentencing Guidelines Calculation**

Defendant signed a plea agreement with the United States and pled guilty on October 13, 2011, to an Information charging him with one count of making a false claim against the United States in violation of 18 U.S.C. § 287.  As set forth in the plea agreement between the parties, the offense of conviction, making a false claim, is governed by U.S.S.G. § 2B1.1, which applies to, "Larceny, Embezzlement, and Other Forms of Theft, etc."  The parties agreed that the base offense level is six (6) and that an upward adjustment for the dollar amount of false claims received requires an additional fourteen (14) level enhancement.

**B.      One-Level Additional Adjustment for Timely Acceptance Pursuant to U.S.S.G. § 3E1.1(b)**

The Sentencing Guidelines provide that, in addition to the two-level downward adjustment for acceptance of responsibility, under certain circumstances a defendant may be awarded an additional one-level downward adjustment.  This additional level applies if (1) the offense level determined prior to the two-level reduction is level 16 or greater; and (2) defendant

4

assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate resources efficiently.

In this case, the Probation Office has recommended and the United States concurs that defendant should receive the two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a).  Conditioned upon the Court affirming that recommendation and granting this two-level adjustment, the United States, hereby, moves for an additional one-level downward adjustment pursuant to U.S.S.G. § 3E1.1(b), based on the defendant's timely notification of his intention to plead guilty, which permitted the government to allocate efficiently its prosecutorial resources.

## III    CRIMINAL FINE

The Court shall impose a fine in all cases, except if the defendant establishes that he is unable to pay and not likely to become able to pay.  U.S.S.G. § 5E1.2(a).  In this case, as disclosed in paragraph 78 of the pre-sentence report, the defendant does not appear to have the resources to pay a criminal fine over and above those resources required to pay restitution, as discussed below.  Accordingly, the United States does not recommend that the Court impose a fine upon the defendant.

## IV    RESTITUTION

As set forth in Paragraph 16 of the plea agreement, defendant has agreed to pay restitution to the DOD in the amount of $485,535.[1]  This amount represents the money received by defendant as a result of the ninety-nine (99) false travel vouchers he submitted from

---

[1] This amount was calculated as the sum of the money defendant received in violation of 18 U.S.C. § 287, as detailed in the Factual Basis for Plea, ¶1-10.

5

September 2008 through April 2011.  Accordingly, the United States requests that the Court

order the defendant to make the agreed-upon restitution to the DOD in the amount of $485,535.

## V       RECOMMENDATION

Imposing a sentence consistent with a combined adjusted offense level of 17 (24-30

months incarceration) would adequately account for the nature and circumstances of the offense

and the characteristics of the defendant, reflect the seriousness of defendant's crimes, promote

respect for the law, provide just punishment for the offenses, afford sufficient general and

specific deterrence, and avoid unwarranted sentencing disparities.  18 U.S.C. § 3553(a).

### A.      Nature and Circumstances of the Offense

In this case, defendant developed a long-running, multi-year scheme of submitting false

travel claims using the personal identifying information of a former colleague, the names of

several unsuspecting individuals, including his sister, and then directed the proceeds of his

scheme to his sister who returned them to the defendant.  After submitting the initial sixteen (16)

false claims, defendant became so bold as to have the funds sent directly to his own bank

account —the same one in which he received his salary from the AFIP every two weeks.

Defendant's brazen scheme spanned nearly three years during which he submitted nearly one

hundred false travel vouchers resulting in the theft of more than $485,000 from his employer, the

AFIP.

Defendant's conduct is all the more egregious given that it took place during a time of

war when the DOD was tasked with fighting conflicts in multiple theaters with limited resources

in difficult economic times.  Accordingly, defendant's conduct merits a sentence at the high end

of the sentencing Guidelines range.

### B.      Characteristics of the Defendant

Defendant's conduct was not a singular, aberrant event.  Instead, defendant engaged in a

long-running scheme lasting almost three years through which he stole nearly half a million

dollars from the AFIP.  Defendant then used this money to enrich himself and his family.

Although he was a GS-12 with an annual income of approximately $68,000 (PSR at ¶61) and a

combined household adjusted gross income of between $120,000 and 132,000 for the years 2008

through 2010 (PSR at ¶70), that proved to be insufficient for the defendant.  His greed led him to

steal from his employer and the American taxpayers.  What makes his theft all the more

egregious is the fact that he did this, not because he was in dire need—but because of his

unbridled greed.

Defendant used the money he stole to enrich himself and his family.  As indicated in the

PSR, defendant used the proceeds of his scheme to buy not one, but three sail boats—a 27 foot

Bristol, a 30 foot Dufour and a 39 foot C&C.  He also purchased a luxury automobile—an Audi

A4.  Additionally, he used the stolen funds to pay for vacations and trips as well as the

mortgages on his two homes and for the payment of his son's college tuition at William and

Mary College.

Defendant's conduct in this case is strikingly similar to criminal conduct he committed as

a civilian employee of NATO in 2002.  As indicated in the PSR, defendant was arrested by

British authorities in 2003 for embezzling funds through the computerized accounting system at

NATO. PSR at ¶38.  In that instance, defendant transferred funds from one account to another

and then issued a check to himself in the amount of approximately $84,000, which he intended to

use for his own personal benefit.  Defendant was convicted of the crime in December 2003 and

was sentenced to two years of incarceration.  He was subsequently deported by the British authorities in July 2004. *Id*.  Despite this conviction, defendant was still somehow able to secure employment with the AFIP in 2007.

Under the Guidelines, however, this previous conviction is not considered in calculating defendant's Criminal History Category.  *See* PSR at ¶38 and U.S.S.G. § 4A1.2(h).  Indeed, foreign convictions are not included in the Criminal History calculous, despite the close similarities and common derivation of the British and United States justice systems. Nevertheless, defendant's previous conviction, which occurred less than five years before he began his latest criminal scheme at the AFIP may be considered by the Court as a basis for an upward departure based on the inadequacy of Criminal History Category.  *See* U.S.S.G. § 4A1.3. For this reason alone, the Court should, at a minimum, impose a sentence of incarceration upon defendant at the high end of the applicable Guidelines range.

### C.    General Deterrence

A sentence within Offense Level 17 will also provide general deterrence as the United States continues to spend billions of dollars in Afghanistan and other theaters around the globe. 18 U.S.C. § 3553(a)(2)(B).  A sentence at the high end of Offense Level 17 will provide the necessary general deterrence for future DOD employees, who will be on notice that theft of government funds for personal gain will be uncovered and punished accordingly.

## CONCLUSION

Accordingly, the United States respectfully requests that the Court sentence defendant to a period of incarceration of 30 months, a period of supervised release not to exceed three years, and a $100 special assessment.  This sentence represents an Offense Level 20, as set forth above; a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b), yielding an Adjusted Offense Level 17 (24-30 months incarceration).  In addition, the United States respectfully requests that defendant be ordered to pay restitution to the DOD in the sum of $485,535.  Finally, the United States requests that the Court enter the judgement of forfeiture against the defendant as agreed to by the parties.

DATED:        December 20, 2011, at Washington, D.C.

JACK SMITH, Chief
Public Integrity Section
Criminal Division


  /s/
RICHARD B. EVANS
Trial Attorney
United States Department of Justice
Criminal Division
Public Integrity Section
1400 New York Ave., NW, 12th Floor
Washington, DC 20005
(202) 353-7760
richard.b.evans@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of December 2011, I electronically filed the foregoing Sentencing Memorandum using the CM/ECF system which will send notification of such filing to the following attorney, who is known to represent the defendant:

Mr. Allen G. Dale, Attorney for Defendant John R. Brock.


/s/ _____
Richard B. Evans
U.S. Department of Justice
Criminal Division
Public Integrity Section
1400 New York Ave, NW
Washington, D.C. 20005